**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEVEN GOLD,

               Petitioner,

               v.

OPERA SOLUTIONS, LLC,

               Respondent.

Case No. 16-cv-08121 (JPO)

---

**PETITIONER STEVEN GOLD'S MEMORANDUM OF LAW IN OPPOSITION TO
RESPONDENT'S MOTION TO MODIFY THE AWARD AND IN FURTHER SUPPORT
OF THE PETITION TO CONFIRM THE AWARD**

---

GOODSTADT LAW GROUP, PLLC

Andrew S. Goodstadt
George D. Vallas
520 Eighth Avenue, 14th Floor
New York, New York 10018
Telephone: (646) 430-8295
Facsimile: (646) 430-8294

*Counsel for Petitioner Steven Gold*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ............................................................................................................... ii

Preliminary Statement........................................................................................................... 1

Statement of Facts................................................................................................................ 3

   I.   The Employment Agreement Guarantees Mr. Gold's Bonus .............................................. 3

   II.  Respondent Terminates Mr. Gold Based On Manufactured Allegations Of "Cause" In An Attempt To Avoid Payment Of The Guaranteed Bonus .......................... 5

   III.  Procedural History ........................................................................................... 7

Argument ............................................................................................................................ 11

   I.   Opera Is Not Entitled To Modify The Award Because There Was No Evident Material Mistake Or Miscalculation .................................................................... 13

   II.  Opera Is Not Entitled To Vacate The Award Because Judge Pratt Did Not Exceed His Powers ....................................................................................... 15

   III.  There Is No Public Policy Basis To Vacate The Award.................................... 19

Conclusion ......................................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*ACP Inv. Grp., LLC v. Blake*,
 2016 U.S. Dist. LEXIS 142034 (S.D.N.Y. Oct. 13, 2016) ............................................2, 11

*Arbeeny v. Kennedy Exec. Research, Inc.*,
 71 A.D.3d 177 (1st Dep't 2010) ................................................................................9, 17

*Cardinale v. 267 Sixth St. LLC*,
 2014 U.S. Dist. LEXIS 136340 (S.D.N.Y. Sep. 26, 2014) ....................................12, 14, 19

*Collins & Aikman Floor Coverings Corp. v. Froehlich*,
 736 F. Supp. 480 (S.D.N.Y. 1990) ...............................................................................15

*Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv.*,
 2000 U.S. Dist. LEXIS 558 (S.D.N.Y. Jan. 24, 2000)........................................11, 13, 14

*DiRussa v. Dean Witter Reynolds Inc.*,
 121 F.3d 818 (2d Cir. 1997) .................................................................................13, 18

*E. Assoc. Coal Corp. v. United Mine Workers*,
 531 U.S. 57 (2000).....................................................................................................12

*Emilio v. Sprint Spectrum L.P.*,
 582 F. App'x 63 (2d Cir. 2014).....................................................................................18

*Emilio v. Sprint Spectrum L.P.*,
 2014 U.S. Dist. LEXIS 17152 (S.D.N.Y. Feb. 11, 2014) ...............................................18

*Fellus v. Sterne, Agee & Leach, Inc.*,
 783 F. Supp. 2d 612 (S.D.N.Y. 2011) ...........................................................................14

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995)....................................................................................................11

*Halligan v. Jaffray, Inc.*,
 148 F.3d 197 (2d Cir. 1998).........................................................................................11

*Jock v. Sterling Jewelers Inc.*,
 646 F.3d 113 (2d Cir. 2011).............................................................................15, 16, 18

*Katz v. Feinberg*,
 167 F. Supp. 2d 556 (S.D.N.Y. 2001) ...........................................................................15

*Kerr v. John Thomas Fin.*,
    2015 U.S. Dist. LEXIS 92684 (S.D.N.Y. July 16, 2015) ........................................... 12-13

*Lucente v. Int'l Business Mach.*,
    310 F.3d 343 (2nd Cir. 2002) .........................................................................................17

*Neshgold LP v. N.Y. Hotel & Motel Trades Council*,
    2013 U.S. Dist. LEXIS 134923 (S.D.N.Y. Sep. 18, 2013) .................................................12

*Oxford Health Plans LLC v. Sutter*,
    133 S. Ct. 2064 (2013) ............................................................................. 11, 12, 17-18, 20

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*,
    497 F.3d 133 (2d Cir. 2007) ................................................................. 11, 12, 19, 20

*PMA Capital Ins. Co. v. Platinum Underwriters Berm., LTD.*,
    659 F. Supp. 2d 631 (E.D. Pa. 2009) ..................................................................... 15-16

*Steelworkers v. Enterprise Wheel & Car Corp.*,
    363 U.S. 593 (1960) ......................................................................................................20

*T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010) ..........................................................................................18

*United Elec. v. Litton Microwave Cooking Prods.*,
    704 F. 2d 393 (8th Cir. 1983) .......................................................................................16

*United Elec. v. Litton Microwave Cooking Prods.*,
    728 F.2d 970 (8th Cir. 1983) .........................................................................................16

*Wakefield v. N. Telecom.*,
    769 F.2d 109 (2nd Cir. 1985) ....................................................................................9, 17

*Westerbeke Corp. v. Daihatsu Motor Co.*,
    304 F.3d 200 (2d Cir. 2002) ..........................................................................................18

*W.R. Grace & Co. v. Local 759*,
    461 U.S. 757 (1983) ......................................................................................................17

### STATUTES

9 U.S.C. § 10(a)(4) ..................................................................................................... *passim*

9 U.S.C. § 11(a) ......................................................................................................... *passim*

**PRELIMINARY STATEMENT**

Petitioner Steven Gold ("Petitioner" or "Mr. Gold") respectfully submits this Memorandum of Law in opposition to the Motion of Respondent Opera Solutions, LLC ("Opera" or "Respondent") to Modify the Final Decision and Award issued by the Honorable George C. Pratt on October 13, 2016, *see* Graffeo Decl. Ex. D (the "Award"), and in further support of his Petition to Confirm the Award.

Respondent's motion represents nothing more than an attempt to take yet a *third* bite of the apple and improperly re-argue a substantive factual and legal issue that was *twice* submitted to and conclusively resolved by Judge Pratt. Moreover, Respondent supports its motion by misrepresenting the Employment Agreement, by mischaracterizing the dispute resolved in arbitration, and by attempting to distort the arbitral award.  Most surprisingly, Respondent also attempts to impugn Judge Pratt's credibility and ability to apply principled law, despite his universally respected record as a former long-serving member of the federal judiciary and distinguished arbitrator for more than a dozen years.

Ultimately, Respondent's argument can be reduced to a simple issue of contract interpretation: Respondent is displeased that Judge Pratt rejected its proffered interpretation of the Employment Agreement (which it advances again here), and instead agreed with Mr. Gold that the express contractual language entitled Mr. Gold to his entire Guaranteed Bonus for 2013. Specifically, Respondent argues that Judge Pratt should have awarded Mr. Gold a pro-rated bonus instead, despite the express contractual provision to the contrary.

This was a central dispute in the Arbitration between the parties, and Respondent made the identical argument at length during the arbitration hearing and in its Post-Hearing

Memorandum. *See* Graffeo Decl. Ex. F, at 24-25.[1] After Judge Pratt analyzed and explicitly

rejected Respondent's proposed interpretation in a reasoned, 28-page Award, Respondent

renewed this same argument on November 2, 2016, in its Motion to Modify Decision and Final

Award pursuant to Rule 40 of the Employment Rules of the American Arbitration Association

("AAA"). *See* Goodstadt Decl. Ex. A. That motion — identical to the instant motion — was

denied by Judge Pratt on November 8, 2016 as "an attempt to reargue the merits of the decision

and award [that] does not involve any clerical, typographical, technical, or computational error,

which are the only errors that I may address at this time." *See* Goodstadt Decl. Ex. B. Now,

Respondent attempts to raise the same exact issue for a third time in an effort to avoid the

consequences of its breach of the Employment Agreement.  This Court should deny

Respondent's Motion as an improper third attempt at rehashing the same factual and legal claims

that Judge Pratt already has rejected twice.

  The Federal Arbitration Act (the "FAA"), similar to AAA Rule 40, simply does not

provide Respondent with an avenue to reargue the merits of this contract dispute.  As set forth in

greater detail below, Opera is not entitled to modification of the Award under Section 11(a) of

the FAA because it has identified no miscalculation — or, indeed, *any* calculation at all — in the

award of damages to Mr. Gold. *See* 9 U.S.C. § 11(a). Opera is likewise not entitled to relief

pursuant to any other provision of the FAA — or pursuant to any undefined and unsupported

"public policy" — because the Award represents an appropriate exercise of the Arbitrator's

judgment and discretion over issues properly submitted to him, after consideration of extensive

---

[1]  Mr. Gold does not believe the Court will need to consult his Post-Hearing Memorandum, considering the limited nature of judicial review of arbitral awards set forth below. Nevertheless, Mr. Gold will provide a copy to the Court if necessary.

evidence presented by both parties (including during a three-day live hearing) and lengthy post-hearing briefs.

Although Respondent claims to move for modification of the Award pursuant to Section 11 of the FAA, it is in fact improperly asking the Court to "retrospectively micromanage" the arbitral process and substitute its own judgment for that of Judge Pratt. The FAA simply does not permit such a substantive review of arbitration awards. *See ACP Inv. Grp., LLC v. Blake*, No. 15-CV-9364 (JPO), 2016 U.S. Dist. LEXIS 142034, at *4 (S.D.N.Y. Oct. 13, 2016) (Oetken, J.). Accordingly, Respondent's Motion should be denied in its entirety, and the Award should be confirmed.

## STATEMENT OF FACTS

A complete statement of the underlying facts is contained in Mr. Gold's Petition to Confirm the Award (ECF Nos. 1-2). However, because Respondent's motion is premised on several misleading material distortions of the record, a brief summary of the pertinent facts and procedural history is set forth below.

## I.   THE EMPLOYMENT AGREEMENT GUARANTEES MR. GOLD'S BONUS

Mr. Gold and Opera entered into an Employment Agreement effective as of October 8, 2012. Graffeo Decl. Ex. A (the "Employment Agreement"). The Employment Agreement entitled Mr. Gold to a minimum guaranteed annual cash compensation of $600,000 per year, split between an annual base salary of $300,000 and a guaranteed cash bonus, which would be prorated for the remainder of 2012 and guaranteed in the amount of $300,000 in 2013 (the "Guaranteed Bonus"). Employment Agreement ¶ 6. Although the Guaranteed Bonus is the focal point of this dispute, Respondent's discussion of the relevant section of the Employment Agreement inexplicably omits the most pertinent term, which unequivocally states that:

**If the Employee is employed with the Company at the end of 2013**, subject to the payment terms set forth in sub-section (iv) below, **he will be entitled to . . . a guaranteed bonus in the amount of $300,000.**

(Employment Agreement ¶ 6(c)(ii)).[2] Indeed, Respondent's elision of this crucial provision is especially ironic (and egregious) in light of its brazen claim that *Judge Pratt* ignored the contract in crafting the Award. *See, e.g.*, Resp't Mem. 7 (asserting that the Arbitrator "in fact completely ignored the specific language of the Agreement when rendering his decision").

Respondent instead focuses entirely on a later sentence that states that Mr. Gold's bonus would be pro-rated if his employment was terminated without cause prior to his "receipt of payment."[3] This argument, already rejected twice by Judge Pratt, entirely disregards the Award's extensive analysis of Section 6(c)(ii), which concludes that Respondent's reading is contradicted by the plain meaning of the contract and also inconsistent with the overwhelming evidence presented during the Arbitration — and outlined briefly below — that the parties understood and intended for the Guaranteed Bonus to vest (and therefore become an earned wage not subject to

---

[2]     As the contractual language makes clear, Mr. Gold's express entitlement to the Guaranteed Bonus was _only_ made subject to the payment terms in Section 6(iv) of the Employment Agreement, which does _not_ contain a requirement that Mr. Gold remain employed on the payment date for the bonus to vest. *See* Employment Agreement ¶ 6(c)(iv) (stating that Opera would pay Mr. Gold's 2013 bonus "as soon as practicable during or just after the 1st quarter following the end of 2013, but in any event in accordance with the Company's then current policy").

[3]     Respondent, without any basis, unilaterally asserts that this pro-rated bonus would amount to $24,710. Resp't Mem. 4. The baffling specificity of this number, made from whole cloth given the lack of any evidentiary support, is especially inappropriate in this forum considering the limited nature of judicial review of arbitral awards.

forfeiture) at "the end of 2013," and not on the date of payment. Award 8-10.[4] As such, Respondent has no basis to modify the Award, and its motion should therefore be denied in its entirety.

## II.   RESPONDENT TERMINATES MR. GOLD BASED ON MANUFACTURED ALLEGATIONS OF "CAUSE" IN AN ATTEMPT TO AVOID PAYMENT OF THE GUARANTEED BONUS

Although the plain meaning of the Employment Agreement alone entitles Mr. Gold to the entire Guaranteed Bonus because he was employed by the Company until January 28, 2014, Judge Pratt also concluded that Opera's conduct in breaching the Agreement by terminating Mr. Gold's employment in a "bad faith" attempt to avoid payment of the Bonus provides further evidence that the parties understood and intended for the bonus to vest at the "end of 2013," and not on the date of payment, as they attempt to argue now. Award at 23-24.

In late 2013, Arnab Gupta, the Chief Executive Officer of Opera, was distressed by the increasingly dire financial situation of the Company. In late December 2013, in a desperate attempt to cut costs, Gupta instructed Opera's Chief Legal Officer, Mitchell Fishberg, to negotiate an amendment to Mr. Gold's Employment Agreement that would absolve Opera of the burden of paying the Guaranteed Bonus. *Id.* at 4-5. Fishberg therefore approached Mr. Gold at "the end of December" — the end of the year — and demanded that Mr. Gold accept $50,000 in lieu of his Guaranteed Bonus (an approximately 84% reduction in the amount Mr. Gold had earned and to which he was contractually entitled). *Id.* at 5. Fishberg threatened to terminate Mr. Gold on December 31, 2013 if Mr. Gold refused to accept this dramatic reduction to his earned wages, in the mistaken belief that Opera could thereby avoid its obligation. *Id.* at 5. This

---

[4]     As discussed below, Judge Pratt further determined that Respondent was not entitled to rely on the "receipt of payment clause" because of its anticipatory breach of the Agreement. *See* Award 22-24.

mistaken belief was based on the Company's misinterpretation that Mr. Gold's "entitlement to

the guaranteed bonus was contingent on his being employed through December 31, 2013"

instead of the "end of the year"—as stated by in the Employment Agreement—or, notably,

instead of the end of the 1st Quarter in 2014, as Respondent now suggests. *Id.*

Despite Fishberg's threats, Mr. Gold refused to surrender his earned wages, as he

correctly understood that, having worked until the end of the year, he was already contractually

entitled to the Guaranteed Bonus. *Id.* Therefore, "true to his word, on December 30th Fishberg

prepared a Notice of Termination of Employment to inform Gold that as of December 30, 2013,

his employment was terminated [without cause]." *Id.* The Termination Notice was mailed to Mr.

Gold, but was later rescinded by the Company because, on the same day — December 30 —

Fishberg and Mr. Gold's attorneys successfully negotiated a "standstill agreement" to "facilitate

further discussion" about a potential amendment to the Employment Agreement. *Id.*

Judge Pratt determined that, by thus threatening to terminate Mr. Gold in bad faith to

avoid paying him the Guaranteed Bonus which he had already earned, Opera (through its counsel

Fishberg) acted in bad faith and therefore committed an "anticipatory breach" of the

Employment Agreement. *Id.* at 24. Nevertheless, despite Opera's anticipatory breach, Mr. Gold

continued his good faith efforts to negotiate an amendment during the standstill period until

January 28, 2014, when Opera attempted to terminate his employment for "cause" in yet another

bad faith effort to avoid the payments to which he was entitled. *Id.* at 6. Although Opera

baselessly alleged that Mr. Gold had violated his Non-Disclosure Agreement by soliciting Opera

employees to join a competing business, Judge Pratt concluded that Opera had no factual basis to

terminate Mr. Gold for "cause."[5] *Id.* at 14-22. The January 28, 2014 termination, based on manufactured "cause," thus represented a second material breach of the Employment Agreement, entitling Mr. Gold damages as of that date. *Id.* at 24.[6]

## III.   PROCEDURAL HISTORY

Mr. Gold initiated the arbitration with the American Arbitration Association, alleging that Opera breached the Employment Agreement by terminating him in bad faith without cause and without making the payments to which he was contractually entitled. Mr. Gold also alleged that Opera (and Gupta individually) violated the New York Labor Law by withholding his earned wages. A hearing was held before Judge Pratt over the course of three days, between July 26 and 28, 2016, during which both parties presented live testimony and extensive documentary evidence. Both parties also subsequently submitted lengthy post-hearing briefs outlining relevant evidence and legal arguments. Award 2.

At the conclusion of the hearing, Judge Pratt confirmed that both parties believed they were provided a "fair opportunity" to present their evidence:

> JUDGE PRATT: Given all that, I put the question to both sides: Do you feel you've had a fair opportunity to present your client's cases?
>
> MR. GOODSTADT: For claimant, yes, I believe we have, Your Honor.

---

[5]     Judge Pratt also determined that Opera breached the Employment Agreement by failing to follow the express procedures set forth in the Employment Agreement for a "cause" termination. *Id.* at 10-14.

[6]     Although Opera claims that it "is in no way questioning the Arbitrator's factual findings," Resp't Mem. 1, that is exactly what it is attempting to do.  Indeed, the misrepresentation that Opera "terminated Gold for cause based on Opera's belief that Gold had violated his Non-Disclosure Agreement and associated duties of loyalty" is directly contradicted by Judge Pratt's factual finding that Opera in fact terminated Mr. Gold in a bad faith attempt to avoid payment of the Guaranteed Bonus and severance to which Mr. Gold was entitled. Award 23.

MR. WIECHMANN: Respondent, also, believes that.

Goodstadt Decl. Ex. C, at 520:21-521:3.

On October 13, 2016, Judge Pratt issued a reasoned, 28-page Award, which concluded that: (a) Mr. Gold was employed by Opera at the "end of 2013" for the purposes of Section 6(c)(ii) of the Employment Agreement[7]; (b) Mr. Gold did not breach any contractual or fiduciary duty of loyalty owed to Opera; and (c) Opera breached the Employment Agreement by terminating Mr. Gold without cause and without making the payments to which he was contractually entitled.[8] Award 26.

The Award's "Discussion" section began with an extensive analysis of Section 6(ii)(c) of the Employment Agreement, the provision at issue here, as well as a discussion of Respondent's tortured reading of that provision. *Id.* 8-10. Judge Pratt determined that, for the purposes of the Employment Agreement, Mr. Gold was employed "at the end of 2013," despite the existence of the Standstill Agreement. *Id.* Specifically, Judge Pratt found that "December 30th is reasonably viewed as the 'end of the year'" because, "by then, Gold had worked through the entire year, except for one workday remaining" and the "guaranteed bonus was intended as compensation for his labors over the whole year." *Id.* at 9. He rejected Opera's assertion that the "receipt of payment" clause disentitled Mr. Gold to the entire Guaranteed Bonus — identical to the argument made in support of this Motion — because "such an interpretation would in effect give

---

[7]     It is incredible that Respondent now accuses Judge Pratt of "completely ignoring the specific language of the Agreement when rendering his decision," Resp't Mem. 7, when Respondent itself "completely ignore[s]" this operative language in the Agreement, which Judge Pratt applied in concluding that Mr. Gold had earned his full Guaranteed Bonus and in rejecting Respondent's interpretation of the Employment Agreement, which they attempt to make yet again in this Motion.

[8]     Judge Pratt also determined that the New York Labor Law did not apply to Respondent's full withholding of Mr. Gold's Guaranteed Bonus. *Id.*

it an unrestricted right to cancel this bonus, which had been 'guaranteed' as a portion of his compensation." *Id.* at 10. Judge Pratt observed that there was an apparent "inconsistency" between the term that guaranteed Mr. Gold's bonus if he were employed "at the end of the year," and Opera's proposed interpretation of the Agreement, which gave it an unrestricted right to cancel the payment arbitrarily by terminating Mr. Gold "at the last minute." *Id.* at 9. Citing the Second Circuit's decision in *Wakefield v. N. Telecom.*, Judge Pratt concluded that this inconsistency must be construed against Opera, because "the law does not approve of an interpretation of a contract that 'would make the performance by one party the cause of the other party's non-performance.'" *Id.* (quoting 769 F.2d 109, 11 (2nd Cir. 1985)).

Judge Pratt further determined that Opera could not rely on the "receipt of payment clause" to avoid liability for the Guaranteed Bonus because it had, through Mitch Fishberg (then Chief Legal Officer at Opera), committed an anticipatory breach of the Employment Agreement by threatening to fire Mr. Gold "without cause" on December 30, 2013, in order to "cut off his right to the bonus." Award at 22-24. Citing *Wakefield* and *Arbeeny v. Kennedy Exec. Research, Inc.*, a decision by the First Department, Judge Pratt determined that "an employer may not in good faith fire an employee solely for the purpose of cutting of his right to receive earned compensation." *Id.* at 23. (citing *Wakefield*, 769 F.2d at 109; *Arbeeny v. Kennedy Exec. Research, Inc.*, 71 A.D.3d 177 (1st Dep't 2010)).  Opera's misconduct on December 30, 2013 (together with its subsequent material breach on January 28, 2014, when it terminated Mr. Gold based on manufactured allegations of "cause") therefore prevented Opera from relying on the "receipt of payment" clause to avoid liability for the Guaranteed Bonus. *Id.* at 23.

Dissatisfied with the Award, Opera filed a Motion to Modify the Decision and Final Award pursuant to AAA Employment Rule 40 on November 2, 2016. Goodstadt Decl. Ex. B. In

support of the AAA Motion, Opera made the identical argument it makes before this Court;

namely, that Judge Pratt's interpretation of the Employment Agreement to entitle Mr. Gold to the

entire Guaranteed Bonus purportedly represents a "computational error." Goodstadt Decl. Ex. B

at 2-4.[9] The AAA Motion was denied by Judge Pratt on November 8, 2016 — six days later —

as "an attempt to reargue the merits of the decision and award, and does not involve  any clerical,

typographical, technical, or computational error, which are the only errors that I may address at

this time." Goodstadt Decl. Ex. C. Respondent now attempts to renew the same argument for a

third time before this Court, in clear contravention of the well-established standard for judicial

review of arbitration awards under the FAA.

Accordingly, Respondent's argument should be denied in its entirety, and the Award

should be confirmed.

---

[9]     Indeed, Respondent in this motion not only makes a substantively identical argument to
the AAA Motion, but also seems to have simply copied and pasted significant passages.
*Compare, e.g.*,  Goodstadt Decl. Ex B at 2-4 ("The Award states that the pro-rata bonus payment
provision in § 6(c)(ii) 'is apparently inconsistent' . . . .  Applying the formula in Section 6(c)(ii),
Gold's 2013 bonus should be recalculated to $24,7100), *with* Resp't Mem. 3-4 ("The Arbitration
Award states that the pro-rata bonus payment provision in § 6(c)(ii) 'is apparently inconsistent' .
. . . Applying the formula in Section 6(c)(ii) of the Employment Agreement, Gold's 2013 bonus
should be recalculated to twenty-four thousand, seven hundred and ten dollars ($24,7100).").
Both of these virtually identical passages are derived from Respondent's Post-Hearing
Memorandum, submitted after the Arbitration hearing. Graffeo Ex. F at 24-25. The instant
motion therefore represents Respondent's third attempt at presenting an identical substantive
argument, after the first two attempts were rejected by Judge Pratt.

## **ARGUMENT**

The Second Circuit "has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138-39 (2d Cir. 2007) (citing *Halligan v. Jaffray, Inc.*, 148 F.3d 197, 200 (2d Cir. 1998)). This extremely deferential review is consistent with the Supreme Court's holding that "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). As the Supreme Court has explained, "that limited judicial review . . . 'maintains arbitration's essential virtue of resolving disputes straightaway'. . . . If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Oxford Health Plans LLC*, 133 S. Ct. at 2068 (internal citations omitted). Indeed, as this Court has acknowledged, "A party challenging an arbitrator's decision faces a mountain range of steep burdens," *ACP Inv. Grp., LLC v. Blake*, No. 15-CV-9364 (JPO), 2016 U.S. Dist. LEXIS 142034, at *4 (S.D.N.Y. Oct. 13, 2016) (Oetken, J.), akin to "fighting an uphill battle on downhill skis." *Id.* at *6. Here, Respondent cannot even come close to satisfying this extremely high burden.

Although Opera ostensibly moves for modification of the Award pursuant to 9 U.S.C. § 11(a), such challenges are, "for the most part . . . used to correct typographical, clerical, and other obvious errors." *Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv.*, 96 Civ. 6441 (PKL), 2000 U.S. Dist. LEXIS 558, at *25 (S.D.N.Y. Jan. 24, 2000). Opera has identified no typographical or clerical error (or, indeed, error of any kind) in the Award. To the contrary, Respondent basically complains that Judge Pratt agreed with Mr. Gold's interpretation

of the bonus provision over Respondent's suggested interpretation, and is now rearguing the same issue by asking this Court to disregard Judge Pratt's reasoned award and substitute it with its own interpretation.  This is not a basis for modification under the FAA, and therefore Respondent is not entitled to such relief pursuant to Section 11(a).

Opera is likewise not entitled to vacatur under Section 10(a)(4) of the FAA (to the extent the motion is construed as seeking such relief, although it does not expressly request it). As set forth above, Judge Pratt's decision is amply supported by the factual record, the express language in the Employment Agreement, and governing law. But even were the Court to disagree with the Award's reasoning, vacatur would still be unjustified. As the United States Supreme Court recently held, "[b]ecause the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC*, 133 S. Ct. at 2068 (quoting *E. Assoc. Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000)). There is no doubt that the Award satisfies this "extremely deferential standard." *Neshgold LP v. N.Y. Hotel & Motel Trades Council*, 13 Civ. 2399 (KPF), 2013 U.S. Dist. LEXIS 134923, at *8-9 (S.D.N.Y. Sep. 18, 2013) (quoting *Porzig*, 497 F.3d at 139)).

Finally, the Second Circuit does not recognize a common law "public policy" basis to challenge arbitration awards. *See Cardinale v. 267 Sixth St. LLC*, No. 13 Civ. 4845 (JFK), 2014 U.S. Dist. LEXIS 136340, at *21-23 (S.D.N.Y. Sep. 26, 2014) (citing *Porzig*, 497 F.3d at 139) ("The Second Circuit does not recognize violation of a strong public policy as a ground for vacatur under the FAA."). Therefore, even if Respondent had identified a "'well defined and dominant' public policy" violated by the Award (which they have not), they would still not be entitled to relief under the FAA. *Kerr v. John Thomas Fin.*, No. 14-cv-9168 (KBF), 2015 U.S.

Dist. LEXIS 92684, at *17-19 (S.D.N.Y. July 16, 2015) (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824-25 (2d Cir. 1997)).

**I.      OPERA IS NOT ENTITLED TO MODIFY THE AWARD BECAUSE THERE WAS NO EVIDENT MATERIAL MISTAKE OR MISCALCULATION**

Opera claims to request a modification of the Award pursuant to Section 11(a) of the FAA, on the purported basis that Judge Pratt made an "evident material miscalculation" in calculating the damages awarded to Mr. Gold. This requested basis for relief is disingenuous at best. Opera has not — and cannot — identify even a single *calculation* made by Judge Pratt in awarding the Guaranteed Bonus, let alone any evident "miscalculation."  That is because Judge Pratt simply applied the express contractual language in Section 6(c)(ii) of the Employment Agreement to conclude that Mr. Gold earned his full Guaranteed Bonus of $300,000 because he was employed at the "end of 2013."  Award at 8-10.

Rather than identifying any "material miscalculation," Opera instead objects to this considered decision to award Mr. Gold the Guaranteed 2013 Bonus, which, as a review of the 28-page Award makes clear, was the result of a thorough and reasoned interpretation of the relevant provisions of the Employment Agreement. Far from attempting to seek modification of a "typographical, clerical, [or] other obvious error," *Companhia*, 2000 U.S. Dist. LEXIS 558, at *25, Opera is thus _again_ improperly attempting to disguise its disappointment that Judge Pratt did not adopt its erroneous interpretation of the Employment Agreement as a motion to "modify" due to a material "miscalculation." This bait-and-switch approach, based on nothing more than dissatisfaction with the outcome of the Arbitration, represents a clear abuse of Section 11 of the FAA.

As this Court has made clear, "Modification based on evident material miscalculation is generally limited to patently obvious mistakes on the face of the award, such as where the award

would provide for double recovery." *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 619 (S.D.N.Y. 2011). "Section 11(a) does not permit modification where the award is 'not the result of some careless or obvious mathematical mistake, but rather the disposition of a substantive dispute that lays at the heart of the arbitration.'" *Id.* (quoting *Companhia*, 2000 U.S. Dist. LEXIS 558, at *20). In other words, "it is improper for the court to review the arbitrators' 'determination on the merits of the controversy.'" *Id.* (quoting *Companhia*, 2000 U.S. Dist. LEXIS 558, at *27). Indeed, "[i]n those few instances where courts have modified arbitration awards under § 11(a), the errors have always been obvious, and the opposing parties generally have not challenged the miscalculations." *Companhia*, 2000 U.S. Dist. LEXIS 558, at *24-26 (collecting cases).

In attempting to satisfy this standard, Respondent tries to mislead the Court by making the brazen – and patently false – assertion that "the Award is based on <u>*undisputed*</u> and <u>*uncontested*</u> material miscalculations." Resp't Mem. 8 (emphasis added). To the contrary, the crux of Respondent's motion to modify is the heavily disputed interpretative question governing Mr. Gold's entitlement to the Guaranteed Bonus, which was squarely submitted to and resolved by Judge Pratt in the Arbitration.  Thus, it cannot form the basis for modification.  *See Cardinale*, 2014 U.S. Dist. LEXIS 136340, at *23-24 (rejecting motion to modify pursuant to Section 11(a) where "the Court discerns no miscalculation of figures, material or otherwise" and "Petitioners do not point to a clear mathematical or clerical error of the sort warranting modification," but instead the "modification argument is essentially the same as [the] already-rejected arguments for vacatur"); *see also Companhia*, 2000 U.S. Dist. LEXIS 558, at *27 (rejecting motion to modify that "does not ask the Court to correct an 'evident material

miscalculation' of a figure [but] rather asks the Court to review the arbitrator's fundamental determination on the merits of the controversy").

The interpretation of the Guaranteed Bonus clause was one of the central factual and legal questions submitted to Judge Pratt at the Arbitration. *See* Award at 8; *cf. Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (noting that judicial review of arbitration awards are especially limited when the FAA is invoked to challenge an award deciding "a question which all concede to have been properly submitted in the first instance"). Unsurprisingly, the arguments made by Respondent in support of this motion to modify are identical to the arguments made by Respondent in its Post-Hearing Brief (and rejected by Judge Pratt), and are likewise identical to the arguments made in support of Respondent's Motion to Modify before the AAA (also rejected by Judge Pratt). *See supra* n.8. As such, Respondent's motion represents a straightforward abuse of the FAA, and should therefore be denied in its entirety.

## II.   OPERA IS NOT ENTITLED TO VACATE THE AWARD BECAUSE JUDGE PRATT DID NOT EXCEED HIS POWERS

Although, as set forth above, Respondent characterizes is motion as a request for "modification" pursuant to Section 11(a), Respondent's suggestion that "the damages do not draw [their] essence from the agreement between the parties" in fact represents an attempt to vacate the award under Section 10(a)(4), on the basis that the Arbitrator exceeded his powers. Resp't Mem. 5. That Respondent in fact seeks vacatur pursuant to Section 10, regardless of its stated basis for relief, is further reinforced by the cases cited in support of its argument, which all analyze Section 10(a)(4) (to the extent they address the FAA at all). *See, e.g.*, Resp't Mem. 6 (citing *Katz v. Feinberg*, 167 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) (analyzing motion to vacate pursuant to Section 10(a)(4))); Resp't Mem. 6 (citing *Collins & Aikman Floor Coverings Corp. v. Froehlich*, 736 F. Supp. 480, 484 (S.D.N.Y. 1990) (same)); Resp't Mem. 7 (citing *PMA*

15

*Capital Ins. Co. v. Platinum Underwriters Berm., LTD.*, 659 F. Supp. 2d 631, 635 (E.D. Pa. 2009) (same)). *But see United Elec. v. Litton Microwave Cooking Prods.*, 704 F. 2d 393, 395 n.2 (8th Cir. 1983) (analyzing arbitration award pursuant to Labor Management Relations Act, and noting that Eighth Circuit had not ruled on whether FAA applies to arbitration provisions in collective bargaining agreements), *rev'd en banc*, 728 F.2d 970 (8th Cir. 1983)).[10]

However, Respondent is no more entitled to vacatur of the Award under Section 10 than it is entitled to modification under Section 11. In the first place, as set forth above, Judge Pratt's resolution of the parties' dispute was meticulously reasoned and well supported by careful factual findings and extensive citation to governing law, after the question was squarely submitted to him by the Employment Agreement and in the submissions of both parties. *See Jock*, 646 F.3d at 122 (holding that judicial review of arbitration award is especially limited "when section 10(a)(4) is invoked to challenge an award deciding a question which all concede to have been properly submitted in the first instance," and that "[t]he focus of [judicial] inquiry in challenges to an arbitration award under section 10(a)(4) is whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue").

Respondent grossly mischaracterizes the Award as "_completely ignoring_ the specific language of the Agreement," Resp't Mem. 7 (emphasis added), as "so tainted by the Arbitrator's actions that the Arbitration Award simply cannot stand," Resp't Mem. 6, and as so reliant on

---

[10]    Indeed, the *Litton* case case relied on by Respondent not only analyzes the Labor Management Relations Act (rather than the FAA), but also was reversed by the Eighth Circuit sitting *en banc*, because, "under well established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." *United Elec.*, 728 F.2d at 971 (quoting *W.R. Grace & Co. v. Local 759*, 461 U.S. 757 (1983)).  Notably, Respondent simply ignores the later *en banc* reversal.

"computational" mistakes "as to amount to a finding of 'non-fact.'" Resp't Mem. 8. The most cursory review of the Award demonstrates that such characterizations are much closer to deception than to hyperbole.

Far from "ignoring" the contractual language,[11] Judge Pratt devoted almost three pages to a careful analysis of the language in Section 6(c)(ii), *see* Award 8-10, and, additionally, more than two pages to an analysis of the effect of Opera's breach on its ability to rely on the "receipt of payment" clause. *See id.* at 22-24. In both instances, Judge Pratt supported his reasoning with citations to the specific language of the Agreement and to governing Second Circuit and First Department case law. *See* Award at 9 (citing *Wakefield v. N. Telecom*, 769 F.2d 109, 111 (2nd Cir. 1985)); Award at 23 (citing *Lucente v. Int'l Business Mach.*, 310 F.3d 343 (2nd Cir. 2002)); *Wakefield*, 769 F.2d at 109; *Arbeeny v. Kennedy Exec. Research, Inc.*, 71 A.D.3d 177 (1st Dep't 2010)).

Secondly, and more importantly, even if Respondent could demonstrate that Judge Pratt's interpretation of the Employment Agreement *were* incorrect (which it cannot), that in itself would be insufficient to justify vacatur of the Award. Instead Respondent must show not only that the Arbitrator's decision was incorrect, but that the Arbitrator also acted outside the scope of his contractually delegated authority. The Supreme Court has recently held that Section 10(a)(4) "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly." *Oxford Health Plans*

---

[11]    In a surprising display of temerity, in the very next sentence after Respondent accuses Judge Pratt of awarding damages that are "not at all consistent with the Employment Agreement's provisions for a bonus if Gold had been terminated without cause," Opera itself intentionally elides the most important term from its block quote of the relevant contractual provision, which expressly states that Mr. Gold "*will be entitled to*" the Guaranteed Bonus if he is employed "*at the end of 2013*." Resp't Mem. 3-4; *cf.* Employment Agreement at ¶ 6(c)(ii). This glaring omission exposes the absurdity of Respondent's motion.

*LLC*, 133 S. Ct. at 2070. Indeed, "convincing a court of an arbitrator's error — even his grave error — is not enough. So long as the arbitrator was 'arguably construing' the contract — which this one was — a court may not correct his mistakes under §10(a)(4)." *Id*.

This central finding has been repeatedly been affirmed by courts in this Circuit. *See*, *e.g.*, *Emilio v. Sprint Spectrum L.P.*, 582 F. App'x 63, 64 (2d Cir. 2014) (citing *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 222 (2d Cir. 2002)) ("If the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand."); *Jock.*, 646 F.3d at 122 (citing *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997)) ("The focus of our inquiry in challenges to an arbitration award under section 10(a)(4) is whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.").

Here, there can be no suggestion that Judge Pratt "strayed from his delegated task" in construing Section 6(c)(ii) of the Employment Agreement. The interpretive question was expressly submitted to him by both parties after a hearing and extensive briefing on the precise issue. There is likewise no good faith basis to suggest that Judge Pratt "ignored" or "misconstrued" the Employment Agreement, and any allegation to the contrary cannot possibly be supported by the Award or the record. *But see Emilio v. Sprint Spectrum L.P.*, 11 Civ. 3041 (JPO), 2014 U.S. Dist. LEXIS 17152, at *13-14 (S.D.N.Y. Feb. 11, 2014) (Oetken, J) (citing *T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010)) (holding that, when reviewing arbitration awards related to "contract interpretation," the deferential standard of review "*essentially bars review of whether an arbitrator misconstrued a contract*." (emphasis added)). To the contrary, the Award devotes significant attention to analyzing the Agreement's language and relevant facts in light of the governing legal principles set forth by the

Second Circuit and First Department. As such, Respondent has failed to satisfy the exacting standard for vacatur pursuant to Section 10(a)(4) of the FAA. The motion should be therefore denied, and the Award should be confirmed.

## III.   THERE IS NO PUBLIC POLICY BASIS TO VACATE THE AWARD

Opera's final argument, that the Award should be modified (or vacated) because it is contrary to public policy, can be disposed of quickly. In the first place, it is black letter law that the Second Circuit does not recognize a "public policy" basis to challenge arbitration awards. *See Cardinale v. 267 Sixth St. LLC*, No. 13 Civ. 4845 (JFK), 2014 U.S. Dist. LEXIS 136340, at *21-23 (S.D.N.Y. Sep. 26, 2014) (citing *Porzig*, 497 F.3d at 139). As such, Respondent's attempt to vacate the Award based on its diatribe against the arbitration process generally, and against Judge Pratt specifically, is doomed from the outset.

Moreover, even if Opera were permitted to argue that public policy can somehow justify vacatur of an arbitration award (which it cannot), it has not identified any "public policy considerations, embodied in statute or decisional law, [which] prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator." *Cardinale v. 267 Sixth St. LLC*, No. 13 Civ. 4845 (JFK), 2014 U.S. Dist. LEXIS 136340, at *21 (S.D.N.Y. Sep. 26, 2014) (emphasis in the original). To the extent Opera does propose any public "policy" that the Award purportedly violates, it is the nebulous and unsupported suggestion that the judiciary's "unwillingness to provide a meaningful review of material errors made in an arbitration proceeding" will lead to a loss of faith in the arbitration process, which will contribute to the decline of commercial arbitration and the inundation of courts with more litigation. Resp't Mem. 9.

Opera cites no law (or authority of any kind) to support this purported "public policy." Opera's failure to do so is perhaps unsurprising, as the proposed "policy" in fact directly contradicts the well-defined preference for arbitration and prohibition of precisely such substantive review of arbitral awards that has been repeatedly articulated by Congress, by the Supreme Court and by the Second Circuit. *See, e.g. Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2070-71 (2013) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)) ("As we have held before, we hold again: 'It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. The arbitrator's construction holds, however good, bad, or ugly.'"); *Porzig*, 497 F.3d at 138-39 ("The value of arbitration lies in its efficiency and cost-effectiveness as a process for resolving disputes outside the courts, and its tendency to foster a less acrimonious process. . . . To encourage and support the use of arbitration by consenting parties, this Court, therefore, uses an extremely deferential standard of review for arbitral awards." (internal quotations omitted")).

As such, Respondent has failed to identify any basis to justify modification or vacatur of the Award. It bears mention, however, that even if Respondent were entitled to seek modification of the Award based on a violation of public policy (which it is not), this case would be uniquely ill-suited for such a challenge.

Indeed, rather than identifying a "public policy" violated by the Award, Respondent instead resorts to portraying Judge Pratt as a "private judge[]" overseeing a hearing that was "distantly remote from the fair process procedurally followed and application of principled law

20

found in the judicial process." Resp't Mem. 9. *But see* Goodstadt Decl. Ex. C, at 520:21-521:3 (representing, through counsel, that Opera had a fair opportunity to present its case).

This is not a public policy argument. It is a misguided *ad hominem* attack. Indeed, it is the hallmark of the frustration of a party that has lost in arbitration, and again lost a baseless motion to modify before the same arbitrator. And, when set against the reasoned, thorough, and well-supported Award in this case — not to mention Judge Pratt's distinguished service as a judge on the Second Circuit and the Eastern District of New York, together with his reputation as a leading expert in the field — it casts the disingenuous character of Respondent's argument into sharp relief.

Accordingly, Respondent's motion to modify the Award should be denied in its entirety, and Mr. Gold's Petition to Confirm the Award should be granted.

**CONCLUSION**

For all the reasons discussed herein, Petitioner respectfully requests that this Court deny

Respondent's Motion in its entirety, confirm the Final Award, and grant such other and further

relief as the Court may deem just and proper.

Dated: December 28, 2016
      New York, New York                    Respectfully submitted,

                                          **GOODSTADT LAW GROUP, PLLC**

          By:    _____
                         Andrew S. Goodstadt
                         George D. Vallas
                         520 Eighth Avenue, 14th Floor
                         Telephone: (646) 430-8295
                         Fax: (646) 430-8294
                         agoodstadt@goodstadtlaw.com
                         gvallas@goodstadtlaw.com

                         *Attorneys for Petitioner Steven Gold*