UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN GOLD,

         Petitioner,

    -v-

OPERA SOLUTIONS, LLC,

         Respondent.

16-CV-8121 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

  This action is brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to confirm an arbitration award in favor of Petitioner Steven Gold ("Gold") and against Respondent Opera Solutions, LLC ("Opera"). (Dkt. No. 1 ("Petition").) Opera moves to modify the arbitration award pursuant to 9 U.S.C. § 11. (Dkt. No. 31.) For the reasons that follow, Opera's motion to modify the award is denied, and Gold's petition to confirm the award is granted.

**I. Background**

  Unless otherwise indicated, the following facts are taken from the allegations in the Petition and the supporting materials attached thereto.

  On October 8, 2012, pursuant to an Employment Agreement, Opera hired Gold to serve as its Executive Vice President. (Petition ¶ 2; Dkt. No. 1-1 ("Employment Agreement").) Under the Employment Agreement, Gold was guaranteed an annual base salary of $300,000, in addition to benefits, a bonus, and equity grants. (Employment Agreement § 6(a)–(d).) At the center of the present dispute is the proper calculation of the bonus.

  According to the Employment Agreement, if Gold was "employed with [Opera] *at the end of 2013* . . . he [is] entitled to a total bonus of up to $700,000, as follows: (A) a guaranteed

1

bonus in the amount of $300,000 (the '<u>2013 Guaranteed Bonus</u>'); and (B) a performance-based bonus of up to $400,000, to be calculated and paid by [Opera] on a pro-rata basis for booked revenue achieved by [Gold] in excess of $21.4 million up to a maximum of $50 million (the '<u>2013 Performance Bonus</u>') (together the '<u>2013 Total Bonus</u>')." (Employment Agreement § 6(c)(ii) (emphasis added).) However, if Gold "is terminated by [Opera] without Cause *prior to his receipt of payment* of the 2013 Guaranteed Bonus or the 2013 Performance Bonus, [Opera] shall pay [Gold] a pro-rated portion of the 2013 Total Bonus, based on the booked revenue achieved by [Gold] at the time of termination."[1] (*Id.* (emphasis added).) On January 28, 2014, Opera terminated Gold, purportedly for cause, and refused to pay Gold's bonus, among other things. (Petition ¶¶ 10–11.)

Pursuant to § 16 of the Employment Agreement, Gold initiated arbitration proceedings against Opera on July 15, 2015. (*Id.* ¶ 12.) The Honorable George C. Pratt was appointed as arbitrator. (*Id.* ¶ 13). After holding an arbitration hearing, Judge Pratt issued a Final Decision and Award on October 13, 2016. (*Id.* ¶¶ 18, 20; Dkt. No. 1-2 ("Award")).

In his decision, Judge Pratt analyzed § 6(c)(ii) of the Employment Agreement. He first addressed whether Gold was employed "at the end of 2013," thus entitling him to the 2013 Guaranteed Bonus of $300,000. (Award at 8–10.) He found that Opera had attempted to terminate Gold on December 30, 2013, which Opera argued was one day prior to "the end of 2013," to avoid paying Gold's bonus.[2] (*Id.* 8.) Judge Pratt rejected Opera's literal interpretation

---

[1] "Cause" is defined in § 9(a)(i)–(v) of the Employment Agreement.

[2] Opera prepared a Notice of Termination of Employment for Gold on December 30, 2013. (Award at 5.) The December 30, 2013, termination was postponed when Gold and Opera entered into a "standstill agreement," which provided that if Gold's employment was terminated during the standstill period—which extended to January 31, 2014—the effective date of the termination would be December 30, 2013. (*Id.*) Gold was officially notified of his termination on January 28, 2013. (*Id.* at 6.)

2

of the phrase "at the end of 2013," and concluded that "December 30th is reasonably viewed as the 'end of the year.'" (*Id.* at 9.) He reasoned that Opera's interpretation would give it the right to "arbitrarily" cancel Gold's bonus, which is inconsistent with the *guaranteed* bonus provided under the Employment Agreement. (*Id.*) Judge Pratt construed this "inconsistency" against Opera, reasoning that the law disfavors interpretations of contracts that "would make the performance by one party the cause of the other party's non-performance." (*Id.* (quoting *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 112 (2d Cir. 1985)).) Judge Pratt held that Gold was, for purposes of the Employment Agreement, employed by Opera "at the end of 2013." (*Id.*)

Judge Pratt then turned to an apparent inconsistency in § 6(c)(ii) of the Employment Agreement. (*Id.* at 9–10.) Under that provision, if Gold is terminated without cause "prior to his receipt of payment of the 2013 Guaranteed Bonus . . . [Opera] shall pay to [Gold] a pro-rated portion" of the bonus based on Gold's performance. (Employment Agreement § 6(c)(ii).) Opera paid out its 2013 bonuses in March of 2014, after Gold was terminated. (Award at 10.) As such, even though Gold was employed "at the end of 2013" and entitled to the 2013 Guaranteed Bonus, because he was terminated before receiving the bonus, § 6(c)(ii) entitles him to a significantly smaller, pro-rated bonus based on his performance.[3] Judge Pratt did not resolve the inconsistency presented by § 6(c)(ii), however, because he found that Opera's breach of the Employment Agreement "terminated the Employment Agreement and undercut any reliance by Opera on the pro-rata provision." (*Id.*) In particular, Judge Pratt found that Opera committed an "anticipatory breach" of the Employment Agreement when it "told Gold that Opera would not

---

[3] Opera calculates the pro-rated bonus to be $24,710.00. (Dkt. No. 37 at 4.) Gold argues, however, that Opera offers no evidentiary support for this figure. (Dkt. No. 35 at 4 n.3.) Because the Court affirms the arbitrator's award, the accuracy of Opera's calculated pro-rated bonus is of no moment.

3

pay his guaranteed $300,000 bonus" and committed a second breach by "purportedly terminating Gold for cause" where no such cause was present. (*Id.* at 22–24.)

Judge Pratt therefore awarded, in relevant part, $300,000 in damages for Gold's 2013 Guaranteed Bonus. (*Id.* at 27.) Opera now moves pursuant to § 11(a) of the FAA to modify the Award.

## II. Discussion

### A. Legal Standard

"It is well established that '[a]rbitration awards are subject to very limited review' in federal court." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Source One Staffing LLC*, No. 16 Civ. 6461, 2017 WL 2198160, at *1 (S.D.N.Y. May 17, 2017) (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)). Under the FAA, "a reviewing court must confirm an arbitration award unless one of several narrow grounds for vacatur or modification is present." *Id.* (citing 9 U.S.C. §§ 9–11). At issue in this case is whether modification of the award is warranted because the arbitrator made "an evident material miscalculation of figures." 9 U.S.C. § 11(a).

To warrant modification, "[t]he miscalculation must be 'clear on the face of the award or can be clearly inferred therefrom.'" *N.Y.C. Dist. Council of Carpenters Pension Fund v. Brookside Contracting Co., Inc.*, No. 07 Civ. 2583, 2007 WL 3407065, at *2 (S.D.N.Y. Nov. 14, 2007) (quoting *Al-Azhari v. Merit Capital Assocs., Inc.*, No. 99 Civ. 9795, 2000 WL 151914, at *2 (S.D.N.Y. Feb. 14, 2000)). "Section 11(a) does not permit modification where the award is 'not the result of some careless or obvious mathematical mistake, but rather the disposition of a substantive dispute that lays at the heart of the arbitration.'" *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 619 (S.D.N.Y. 2011) (quoting *Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*, No. 96 Civ. 6441, 2000 WL 60200, at *6 (S.D.N.Y. Jan. 25, 2000)).

4

"In considering a challenge to an arbitration award, '[t]he principal question for the reviewing court is whether the arbitrator's award draws its essence from the agreement to arbitrate . . . .'" *ACP Inv. Grp., LLC v. Blake*, No. 15 Civ. 9364, 2016 WL 5947290, at *2 (S.D.N.Y. Oct. 13, 2016) (alteration in original) (quoting *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009)). Indeed, "'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' a court's conviction that the arbitrator has 'committed serious error' in resolving the disputed issue 'does not suffice to overturn his decision.'" *ReliaStar*, 564 F.3d at 86 (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

Moreover, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). "[A]s a general matter, a court is required to enforce the arbitration award as long as there is a 'barely colorable justification for the outcome reached.'" *Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua–College of Med.*, 826 F.3d 634, 638 (2d Cir. 2016) (quoting *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)).

### B. Modification Under § 11(a)

In this case, it is clear that the arbitrator's award must be confirmed. Opera's sole argument for modification under 9 U.S.C. § 11(a) is that the arbitrator "did not calculate damages consistent with the subject Employment Agreement." (Dkt. No. 40 at 1.) Opera argues that the arbitrator "completely ignored the specific language of the Agreement when rendering his decision" and "designated a separate and distinct standard for damages distinct from the Employment Agreement." (Dkt. No. 37 at 7.)

But the relief sought by Opera is not available under § 11(a), which "does not permit modification where the award is 'not the result of some careless or obvious mathematical mistake, but rather the disposition of a substantive dispute that lays at the heart of the arbitration.'" *Fellus*, 783 F. Supp. 2d at 619 (quoting *Companhia*, 2000 WL 60200, at *6). Interpretation of § 6(c)(ii) of the Employment Agreement was one of the central issues disputed at the arbitration. And Judge Pratt considered and rejected Opera's proposed interpretation of that provision. (Award at 8–10.) He found that Gold was employed "at the end of 2013," that Gold was therefore entitled to the $300,000 Guaranteed Bonus, and that Opera's reliance on any seemingly inconsistent provision was foreclosed by Opera's two breaches of the Employment Agreement. (*Id.* at 8–10, 22–24.) Section 11(a) modification is not available where, as here, "the Court discerns no miscalculation of figures, material or otherwise," and Opera "do[es] not point to a clear mathematical or clerical error" but rather "seek[s] modification on substantive grounds." *Cardinale v. 267 Sixth St. LLC*, No. 13 Civ. 4845, 2014 WL 4799691, at *10 (S.D.N.Y. Sept. 26, 2014).

Accordingly, Opera's motion to modify the arbitration award pursuant to 9 U.S.C. § 11(a) is denied.

### C. Public Policy

Alternatively, Opera argues that the Court should modify the award as against public policy. (Dkt. No. 37 at 9–10.) If an arbitrator's award violates public policy, a court may refuse to enforce it. *See United Paperworkers*, 484 U.S. at 42 ("A court's refusal to enforce an arbitrator's award . . . because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy."). "[T]he public policy ground for vacatur applies only when an arbitration award is clearly shown, on its face, to be in violation of an 'explicit' and 'well defined'

6

and dominant' policy that is set out in regulations, statutes or case law." *Chase v. Cohen*, 519 F. Supp. 2d 267, 281 (D. Conn. 2007).

In this case, Opera asserts that the judiciary's "unwilling[ness] to provide a meaningful review of material errors made in an arbitration proceeding" will lead to a loss of faith in the arbitration process. (Dkt. No. 37 at 9). This, Opera argues, will lead to fewer parties engaging in arbitration and more litigation in the district courts. (*Id.*) But the public policy exception "only applies when 'public policy considerations, embodied in statute or decisional law, prohibit, *in an absolute sense*, particular matters being decided or certain relief being granted by an arbitrator.'" *Cardinale*, 2014 WL 4799691, at *9 (quoting *City Sch. Dist. of N.Y. v. McGraham*, 17 N.Y.3d 917, 919 (2011)). Opera's general concern that affirming the award in this case may incentivize future litigants to forego arbitration does not justify modification of the arbitration award as contrary to public policy. Opera's motion to modify is therefore denied.

### III. Conclusion

For the foregoing reasons, Gold's petition to confirm the arbitration award is GRANTED, Opera's motion to modify the arbitration award is DENIED, and the arbitration award is hereby CONFIRMED.

The Clerk of Court is directed to close the motion at Docket Number 31 and to close the case.

SO ORDERED.

Dated: August 1, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge